Second argument set for today, United States v. Aloba, case number 22-50291. Good morning, your honors. Can you see and hear me all right? Yes. Great, thank you. I'm David Anacarico for the appellant Oriyomi Aloba. If I may, I'd like to reserve three minutes for rebuttal. Mr. Aloba is entitled to a new sentencing hearing because his guidelines offense level was overstated, turning first to the issue of the salaried employees and the erroneous enhancement for $45,000 in fictional loss to the Los Angeles Superior Court, or LASD. Can I ask about that? Because I was intrigued by your argument. I mean, your argument seems to be, look, these were salaried employees. They were going to be doing this job anyway, so you can't count that as loss. And yet in other criminal statutes, there's case law to say the opposite, that how the victim chooses to respond, whether they choose to use in-house work or outside work, either one can be considered loss. Do you have any cases that support your position that this wouldn't be an actual loss? Yes, Your Honor. In this court's Harper case, the court said, quote, loss is the amount of money the victim has actually ended up losing, not what it could have lost. And that's because loss under the guidelines is a distinct question from damage under the statute that Your Honor is referring to in the Middleton case. Loss is about harm to the pocketbook, the wallet. It's a specific kind of harm. Well, but why isn't that still loss to the pocketbook if they had to effectively expend resources? I mean, you would agree if they had to hire outside resources to respond to this phishing scam, that that would be loss, right? If they had hired outside contractors, Your Honor, and paid money, which they then lost, absolutely that would be loss. The difference here is that the salaried employees weren't paid anything extra. They only were diverted to perform different tasks. And there's no indication that diverting them to other tasks caused any financial loss to LASC. Their working on other work didn't cause the court to lose any money. And again, Harper tells us that loss is the amount of money the victim actually ended up losing, not what it could have lost. Could have lost would be if they had used contractors. Here they didn't. And I think a very important point on that is that it's not like the government would have it as if he's escaping punishment because their own employees were able to handle this matter instead of contractors. He's serving years in prison. He's just not subject to this one specific enhancement for loss. There are other ways that Mr. Aloba's actions were accounted for at sentencing, including the fact that this was a government agency that didn't have to expend extra resources by hiring contractors. They had their own personnel. He's not getting off scot-free because he's got the enhancements for misrepresenting himself as a government agency, the enhancement for the government being a victim. He also had an enhancement here for obtaining the personal information of others. But the definition of loss for purposes of this enhancement is the same as for the Mandatory Victims Restitution Act. Is that right? I don't know if it's the exact same definition offhand, Your Honor. I did want to make the point about restitution that restitution is about being made financially whole again. And the Los Angeles Superior Court here actually received a windfall. They spent no money to remedy the harm, and then appellant must pay them $45,000 in restitution. So we have an overlapping problem there. I guess it seems a little bit peculiar that on your theory, somebody who victimizes a for-profit business, that's sort of like in Sablon, they'd be able to say, well, our employees who were responding to the cyber attack couldn't be engaged in money-making ventures, and therefore that's our financial loss. But if you victimize a government agency or a nonprofit agency, they can't say that. And so it seems kind of peculiar that for-profit businesses get restitution, but nonprofits and the government don't. That's because they need to be made whole for what they lost, Your Honor. The for-profit bank in one case, that's Sablon, and Slip.net in the Middleton case, they actually lost money. And so they need to be made whole again. Why did they lose money? Because I thought it was the same analogy where they just had in-house employees. They chose to respond to it. Was there other money that they lost there? Because those people are engaged in a money-making business. So when they're diverted to other tasks, their employer loses money, which wasn't the case at the Superior Court. And I'd like to just reiterate that it's not as if crimes against for-profit entities are meaningful and crimes against nonprofit entities or entities that have their own employees who can handle this kind of issue that he gets off scot-free. The fact that this was a government agency got him two separate additional enhancements here. Can I ask about the – maybe you're going to go into it – the second argument about the number of victims? Yes, Your Honor. So when I read your brief, and I thought you had a pretty decent argument here, it's use or – let's put it this way. Under the definitions that are in the sentencing guidelines – not the sentencing guidelines themselves, but the commentary, you seem to have a pretty strong argument, at least as to the definition of victim in the commentary. Are we bound by the definition? Because I think here in this case it might matter. Because to me, if my information is stolen, I would consider myself to be a victim. The guidelines – the commentary wouldn't define me as a victim unless I actually had some financial loss. Are we bound by what the commentary says, or can we use a plain language reading of the sentencing guideline and the definition of victim? Appellant's primary argument here is – and the one that I think carries the day – is that the court doesn't defer to the commentary unless the wording of the guideline itself is genuinely ambiguous. That's the standard from the Kaiser Supreme Court case. Has Loper changed that or made that a different standard? That's the Chevron deference case? I don't know that any case has applied that to the guidelines, but the standard has become even less deferential. That seems to hurt your argument here because it seems to me your best hook is the definitions and the commentary. And if we can't defer to those and we think there's an inconsistency between how victim is normally understood and what the commentary definitions are… Maybe I haven't explained my point well. I don't want the court to defer to the commentary. I want the court to follow the ordinary meaning of victim in the plain text of the guideline. And a victim in the context of a financial fraud crime is someone who suffered financial loss. So then, as the government would have it, we need to defer to Application Note 4E, which attempts to expand the meaning to include anyone whose means of identification was used. But that conflicts with the plain meaning of the word victim in a financial fraud guideline. Now, Your Honor is correct that victims of identity theft are victims. They're not victims under 2B1.1, which is about financial loss. They're victims under the separate guideline 2B1.6, which applies specifically to identity theft crimes. And there you have a two-year mandatory term for that crime. So under that separate guideline, it actually specifically provides that you don't also slap the defendant with not only the mandatory two-year term, but also, under a different guideline, a specific offense characteristic for use of someone's identity. He's not supposed to be doubly punished, and that's an additional reason why we don't consider victims under 2B1.1 and the plain meaning of it to include someone whose identification was used. When you're talking about financial fraud, victimhood is someone who lost money. But if we don't agree with you on that, I mean, if we think that a victim does include anyone whose means of identification was used, then do you think that there are more than 10 victims here? No, Your Honor. There are only six, and that's because there are six specific people who the government charged in the indictment as victims of identity theft. Only six, not 10 or more. Well, but that's not – I mean, the sentencing guidelines aren't limited – that seems to be a different argument. You're arguing that they didn't put that in the indictment, but I've never understood the sentencing guidelines to be limited to those that were put in the indictment. No, Your Honor. It's not so limited, and that's only one part of the argument here. Well, then respond to Judge Miller's question, because his question was, if we don't agree with you on your interpretation of victim as this financial loss, do you agree that there were more than 10 victims? And I guess to be more specific, the district court said there were more than 500 employees, so why is that wrong? Yes, Your Honor. So the point that I started to make but I need to explain further is that there are six people who are in charge in the indictment. So the government from the beginning has only ever relied on there being six people who were victims of the crime of identity theft. And then at sentencing, the government argued that appellants' possession of dozens of email addresses of court employees made all of them victims too. Well, for purposes of the enhancement. Right, and that's what we're addressing here. But possession of email addresses does not qualify for even the application note's commentary view of victimhood, which is someone whose identity was used. And possession is certainly not the same as use of identity. Is that all he had was email addresses? How many credit card numbers did he have of employees? I don't know that any of them were of employees. He was found to have a list of credit card numbers. So he was using the emails. I thought there was at least one he had to have a credit. Maybe I'm misunderstanding. I thought there was two that he tried to charge their credit cards. One was rejected and one was charged for $1,900 for actual loss. Yes, there was one actual victim of financial loss here due to identity theft. But he had those credit cards. That's my question. Oh, go ahead. They're not Los Angeles Superior Court employees' credit card numbers. Oh, I see. This was his goal, but his only actual attempt, his only success with getting someone's credit card number and using it was the one that Your Honor mentioned. But how many credit card numbers did he have? You're sort of suggesting, hey, he only had this list of emails. He had a list of credit card numbers. How many were they? My understanding is that they were hundreds and that they are not from this phishing scam. They were additional conduct that he committed to be uncharged conduct here. But the district court certainly erred by finding that all of the hundreds of members of the Superior Court were victims. That's plainly wrong because they're not victims under either of the definitions that we're using here, which is someone who suffered financial loss or someone whose means of identification was used. So for that reason alone, we have to remand the Superior Court for a correct application of this guideline. But again… Do you want to reserve some time? You're down to about a minute and a half. Yes, thank you. Okay, thank you. We'll hear from the government. Good morning. AUSA Kadar Bhatia for the United States. May it please the Court. The district court here appropriately disposed of the defendant's varied arguments at sentencing and at resentencing. Notably, in the defendant's resentencing submission where he was represented by counsel, he identified five arguments in particular that he was raising again that he wanted the court to address. The court addressed each one of those arguments. Can we maybe hone in on these two arguments we've been discussing? I mean, there may be other questions, but for me, these are the key ones of whether there were more than ten victims and how we analyze that. I don't think that he actually met the victim status. I don't think there were more than ten if you look to the definitions in the commentary. Used or financial loss. I guess I heard a slightly different argument than I understood it, that financial loss is actually part of the actual definition of victim in the sentencing guideline itself. Can you respond to that? I can respond to that, Your Honor. So the guidelines themselves define victim in both the loss table and then there's the separate enhancement for ten or more victims. In the initial reference to victim, for the general purposes of 2B1.1, it describes those who have suffered financial loss or physical harm. Specific to the number of victims enhancement, the definition is those who suffered financial harm, those who suffered physical harm, and those whose means of identification were used. The record here, the trial test. So means and that is in the guidelines themselves or that's commentary? That's commentary. Both of those examples you gave me. Both of those examples. The guidelines themselves only describe victim. What does the guidelines say? It just says victim. It just says victim. Okay, so now I'm back to my question. Can we, I mean, if we're only giving deference, Kaiser deference or Loper deference or whatever deference we're giving to the commentary, first of all, do we have a binding Ninth Circuit case that addresses the definition of victim under this statute or under this guideline? I'll first address deference. Under deference, we think it's Kaiser deference. In Trumbull, earlier this year, the Ninth Circuit reaffirmed that even after Loper, Kaiser was still a deference that applies in this setting. Okay. Ninth Circuit has said that. Ninth Circuit. Okay. That was from earlier this year. Okay. That was Trumbull. And as far as victims, I'm not aware of any cases, and I don't think that the defense cites to any, that define victim on the plain text to mean really anything. The cases are all. Any authority to support your argument that the mere possession of email addresses or credit card numbers without the actual use constitutes victim for purposes of the enhancement? Your Honor, I think Guramuthi could support that conclusion. I think this court doesn't have to reach that decision. The trial testimony from Kenneth Bjork, who is the chief information officer for the Superior Court, was that there were 15. I'm interested to know if you have any authority. So I want to hear what you have to say about what case you think could be used to support this particular interpretation that you're urging that we adopt. For mere possession, I think Guramuthi supports that. I think the Merriam-Webster definition that we cited supports it. Well, and let's put a finer point on it. It seems to me there's a difference between possession of an email address and possession of a credit card number. I mean, would you say they're a victim just because he has possession of their email address? Well, I think in the nature of this particular fraud scheme where he harvested that information as part of the fraud scheme, he sent the phishing email address. That is, in fact, the government's argument, correct? The way you get to the number is because you are looking at the possession of both the credit card numbers and email addresses. Not necessarily, Your Honor. No. So I think there's a different way. We set this in our briefs. There's a different way to get there that is a more explicit use of those identities. So the testimony was that there were 15 to 20 Superior Court. I read that. You didn't raise that below, I didn't see. Did you? Your Honor, what we raised below was that there were many victims. We cited the fact that there were hundreds of victims. We cited the six that were in the indictment. And I don't think we're precluded now. And this Court's not precluded from finding them. Can you walk me through his testimony? Because I read it as a—you could assume that he had some knowledge, but I read it as a little bit off-the-cuff statement from him. Did he give any analysis for how he was saying there were 15 to 20 victims? Yes, Your Honor. So I think it was Kenneth Bjork who was the Chief Information Officer. He was personally involved in the recovery and the cleanup effort here. He was one of the six employees who were counted in that lost number as having spent, you know, really all day every day working on this in the early phase of the attack. And so he was really testifying from personal knowledge here. And I think it also flows from the nature of the fraud scheme. The defendant was sending—he initially was able to compromise one email. For victim MP, he got that victim's email and login, their email and password. He then sent emails to other Los Angeles Superior Court employees that would harvest their emails and their passwords. And then he used those to send millions of emails. So I think it flows naturally from the fraud scheme where I think the end goal was undoubtedly to get credit card numbers and then to charge them, as he did once and attempted to do. But he was trying to get the email accounts first to then use them to send the emails. So he's saying 15 to 20 represent the email accounts that he had. 15 to 20 were the email accounts that were used to send yet more emails as part of the fraud scheme. But ultimately, I think even the district court said there were only seven that were used. I don't believe that the district court had said that there were seven used. Oh, that's just the argument. Yeah, I don't recall that. I want to make this distinction between—and maybe it is a distinction without a difference. But to me, the credit card numbers, that—if he has a credit card number from this phishing scheme, to me that, in the common parlance, would be a victim. Because if he has my credit card number, I mean presumably I would need to get some sort of reporting software or something like that to monitor my credit card. Or even if I had to cancel the credit card and get a new credit card, I would think that that would put me as a victim. How many credit card numbers did he have as opposed to email addresses from this phishing scheme? Because that's part of the problem is that it was like, oh, well, we found this list of 600. But how many came from this phishing scheme? So this phishing—most of the counts that were charged in the indictment related to the Los Angeles Superior Court attack. Some of the counts related to other modes of identity theft that the defendant was doing. So what the defendant had on his computer and in his email account were the 777 credit card numbers that belonged to real people. And so that's in the record at—excerpt from the record at 109. I thought they got winnowed down where actual working ones were. I don't know, where 500. I think it started higher, Your Honor. I think it started at 900 and went down to 700. Here's what I want to know. Can we find more than 10 credit card numbers that are traceable to this scheme? I believe the court—the relevant conduct of this scheme, which is what the guidelines capture, includes that 777. The defendant was doing this scheme in order to harvest these accounts. The scheme wasn't just limited to the Superior Court. And those are the accounts that he had in the email account that he used as part of this scheme and on his own personal computer. So I think all of that counts as the relevant conduct. But I don't think the court has to find all those 777. I think— No, all we have to do is find the 777. I think the 15 to 20 email accounts that were used to send the phishing emails is the narrowest way for the court to find. I hope we understand how they're a victim. I guess I'm a victim because you've used—okay, that makes sense. You've used my email. It's different than having my email address. You've actually used my email. It's really a down-the-middle definition of use. Their information, their emails were used as part of the scheme. Turning to the financial loss question, suppose that they have—the Superior Court has a cyber response department, and their only job is to respond to cyber attacks. And when the bell goes off, they slide down the pole and get in their cyber truck and drive to the scene. And when there isn't a cyber attack, they're just sitting around playing bridge. Would their salaries count as loss for the time that they spent responding to a cyber attack? I'll address this in two parts. First, if there's a legal argument that those salaries could never be covered, we think there's no support for that legal argument at all. If it's a factual argument, then it probably depends on the facts, Your Honor, and I think the district court here was entitled to make a finding about how much of the time was spent on that. So to go back to your example, if it's a legal question, can it ever constitute loss? I don't see any support for the notion that it can never support loss. So I would have thought that the loss is the opportunity cost, right, of what resources were diverted to this, what would the resources have been used for otherwise, and that's what you've lost is the opportunity cost. And in my hypothetical, the opportunity cost is zero because they wouldn't have been doing anything. So why would there be any loss there? I think in this case, these weren't people devoted specifically to cyber intrusions. These were general IT support staff who were diverted from what they were doing to being diverted to doing this. Okay, well, in that respect, this case is different from the hypothetical, but in the hypothetical, if they really wouldn't have been doing anything else, what is your argument for how there could be loss? I think it would probably have to do with the opportunity cost. So what else they would be doing? If they were really doing nothing else, if they were only devoted to preventing this particular defendant's cyber attack, then I think it's possible. But I think this court's case is quite different. Then in the real case, the case here, if you want to say that it's different, doesn't there need to be some evidence of what they would have been doing and in particular of what the financial value to the victim of what they would have been doing was? Because otherwise I don't see how there could be a finding that the court suffered financial loss unless they would have been doing something that had some financial value. Well, Your Honor, I think the record, and this is in Kenneth Bjork's testimony that's in the supplemental excerpt of record, it really goes through how much of a catastrophic attack this was. I think it's easy to imagine. There's a court system right above us right now. Everyone's emails were compromised. People didn't know what to expect. There were emails being sent from employees' emails to other employees, from other employees to the whole world. There were millions of emails sent. So it really did divert the six employees' resources to remediate this fraud. They had to contact employees. They had to contact other people in the court. They had to reformat the computers. So the loss is really divided into the six pools. There's the two pools. One is for the six employees who spent really in the initial phase all day every day working on this fraud or working to remediate the fraud. The other bucket is 40 IT staff who were specifically doing this. So they had to reimage the laptops. They had to find the laptops. They had to interface with the employees. And that was really a conservative estimate of how much time they spent and the lowest rate for any of them. Right, but I guess what I'm asking is, what's the evidence of the productive activity that they would otherwise have been engaged in? I think everybody agrees they spent a lot of time on it, but the loss is not that time because they were getting paid for that time anyway. The loss is we would have had this great new system, but they weren't able to develop the new system because they were busy responding to the cyber attacks. What is the evidence of what they would have done otherwise? I don't think the case law requires that showing of what they would have done otherwise. I think based on the testimony, it's fair that they would have done the other IT work of the court, which is making improvements or doing day-to-day responsibilities. Instead of doing those, they were doing this. I think under Middleton and Sablin, both Ninth Circuit cases, the law doesn't require such an exacting analysis. It's a fair estimate of the loss. I'd like you to address why Middleton should apply here. I mean, is it because it covers the same? I mean, we're not bound by Middleton, are we, in context of this particular case? I mean, it provides a helpful analogy. Why should we adopt it? I think Middleton is helpful because it shows it doesn't matter if the court takes contractors or salaried employees, but it's devoting specific resources to this that aren't going to other things, and a fair estimate of the expenditures that it's facing are the salaries of those individuals. Here, the testimony took an incredibly conservative estimate. It took the lowest rate for any of them. It assumed a little bit less time than they would have done. I think it was a deduction of 25%. And so I think Middleton's a helpful guide to what's lost. Are there any cases that have required this sort of opportunity loss? Because it's a question that I had in the case as well, and I'm wondering, I mean, Middleton seemed persuasive to me at the end of the day, but are there cases that do require this opportunity cost to be shown? No, Your Honor, and I think actually the opposite. In Sablin, the court said that the loss could include not just the wages that were spent, but also the overhead and the lost profit for employees that were working on this. Which obviously wouldn't apply. Because in Sablin, it was a bank, I think, right? The bank was having these people do paying work for clients, right? So there it was fairly easy to calculate, well, if they hadn't been doing this, they would have been billed out to clients at such and such an hourly rate. So that doesn't seem to help you here where you aren't able to point to the productive thing that the people would have been doing. I think Sablin supports the notion that it doesn't have to be the pure, it doesn't have to be the narrowest definition of loss. It can be the fair estimate of what the victim lost as a result. In that case, Sablin, it was because they billed out their time. But here, I think a fair estimate of that loss is the time that the court had to spend devoted purely to this attack when those individuals, those employees, could have been doing the other important busy work of the court system. Okay. I think we have your argument. Thank you very much. We'll give time for rebuttal. Thank you, Your Honors. Turning to the issue of 10 or more victims, I just want to reiterate very briefly that our first argument is that the guideline itself says 10 or more victims. It doesn't define victims, and so you turn to the commentary. If, only if, that victim word is genuinely ambiguous. And here, there is no genuine ambiguity under Kisor because Kisor tells us to apply the ordinary rules of statutory construction. And one of those is that words must be read in their context. And here, the context is financial fraud. But just to be clear, you're saying financial fraud, it only comes in through the context. It's not actually in the text that the victim has to have suffered financial fraud. That's right. When we're reading the plain text, we look to the context. This rule is a statutory construction that Kisor wants us to apply before deferring to commentary. But passing on to the next issue of the number of victims of identity theft, if we do apply the commentary, all the government can point to is this one stray piece of uncertain, off-the-cuff testimony that it never relied on at the sentencing. He said, it's a rough number, you know. Has that been waived? Let me ask you, sorry, but has that been waived because they didn't rely on it at the sentencing? Can we still look to it as something in the record? It has been waived, and secondarily, this isn't enough to carry the government's burden at this point because the government didn't rely on it at sentencing, the court didn't find it. It's a stray remark. The court never found that this was reliable testimony. The court instead said, it's all the hundreds of employees of the superior court, which is plainly incorrect and itself requires remand for the court to make factual findings in the first place if the government is going to rely on this one admittedly uncertain piece of testimony. So this court can't find that the government has met its burden based on that. And then possession of these credit card numbers has not been linked to appellant's conduct in this case. These credit card numbers were not L.A. Superior Court employee numbers, and his possession of more email addresses than he used doesn't make them victims even under the commentary that I don't want the court to apply, even under that note 4E that says it's a means of identity used. He didn't use them by virtue of possessing them. Okay. Thank you, counsel. We appreciate both counsel's argument in this case, and the case is now submitted.
judges: NELSON, MILLER, DESAI